# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|                    |   |                       |
|--------------------|---|-----------------------|
| IN RE KUTTNER,     | ) | 15 C 980              |
|                    | ) |                       |
| Debtor.            | ) | Judge Edmond E. Chang |
|                    | ) |                       |

## MEMORANDUM OPINION AND ORDER

This bankruptcy appeal is brought not by one of the parties, but rather one of their attorneys, Appellant Maurice J. Salem, who represents debtor Susan Kuttner. As part of Kuttner's Chapter 7 case, Salem filed motions on his client's behalf against Appellee 620 South Hough Condominium Association. Salem, for Kuttner, argued that the Condo Association was improperly trying to collect assessments related to an apartment that Kuttner had intended to surrender in bankruptcy. In a number of hearings, the bankruptcy court expressed its skepticism about Salem's legal arguments, but Salem persisted. Salem filed a motion for sanctions against the Condo Association and a motion for summary judgment. The bankruptcy court not only denied the motions, it also imposed sanctions *against* Salem personally (Kuttner herself was spared), specifically in the form of $3,000 in attorney's fees to be paid to the Condo Association. Salem now appeals, but for the reasons discussed below, the sanctions order is affirmed.[1]

---

[1] The Court exercises subject-matter jurisdiction under 28 U.S.C. § 158(a)(1).

## I. Background

### A. Proceedings Leading to Sanctions

The underlying facts, which are essentially not in dispute, are mostly drawn from the bankruptcy court's order granting the Condo Association's motion for sanctions. R. 7-4, Sanctions Order, Case No. 12 B 14212, dated Jan. 20, 2015. When Susan Kuttner filed her Chapter 7 petition in April 2012, she listed in her schedules a condominium she owned at 620 South Hough Street in Barrington, Illinois, which she declared in a statement of intention that she would surrender. *Id.* at 1. The trustee in Kuttner's case issued a "no asset" report and her petition was discharged and the case closed in August 2012. *Id.* Three months later, however, counsel for the 620 South Hough Street Condominium Association, which had not been listed as a creditor on Kuttner's schedules, filed an appearance. *Id.*

Early in 2013, Kuttner moved the bankruptcy court to hold an evidentiary hearing on whether the Condo Association and its counsel should be sanctioned for violating the automatic stay triggered by bankruptcy proceedings by repeatedly calling and sending letters to Kuttner demanding fees. *Id.* at 1-2. Kuttner alleged that she had never occupied the condo in question, which she said had been surrendered to the mortgage-holder, Bank of America. *Id.* at 2. After the parties conducted discovery on the issue, the bankruptcy court held a hearing in September 2013, where it explained that the "key issue" was whether the Condo Association, by sending the payment notices, had attempted to collect on *pre-* rather than *post-* petition assessments. R. 7-2, Sept. 26, 2013 Hrg. Tr. at 3:13-17 ("If they were

attempting to collect on pre-petition, arguably they have [violated the stay]."). Also central to the bankruptcy court's analysis was whether Kuttner had in fact surrendered the condo (cutting off the Condo Association's rights to any fees from Kuttner), with the court repeatedly expressing its concern that, contrary to Salem's view, Kuttner's statement of intention that she would transfer the property was not sufficient for that purpose. *See, e.g., id.* at 6:22-25 ("I'm having trouble accepting that the mere statement in the filing of the schedules that I surrender the property effects a title transfer."); 11:5-9 ("The issue comes down to what does the piece of paper saying I surrender, what legal effect does that have, does that somehow cut off ownership. And I told counsel that I was very doubtful that that was sufficient."); 13:24-25 ("[T]here is case law that's on point that says that that is not the law."). At a subsequent hearing in October, 2013, the bankruptcy court noted that the Condo Association had been "entitled to rely on the fact that [Kuttner] still had an interest" in the property when it sent her the notices, which were an attempt to collect post-petition assessments. R. 7-2, Oct. 24, 2013 Hrg. Tr. at 5:12-14 ("[T]hat's what the statute says."); *see also id.* 7:7-9 ("[A]s long as she has title, it's not dischargeable, and I told you that the last time.").

Nevertheless, Kuttner (or, more specifically for present purposes, Salem) pressed on, moving for summary judgment against the Condo Association and its counsel for seeking post-petition assessments, which violated "Debtor's right to a fresh start." Sanctions Order at 3-4 (quoting Kuttner's brief); *see* R. 7-3, Debtor's Mot. Summ. J., dated Dec. 9, 2013. Salem's rationale was that Kuttner had done

3

"all she can possibly do to remove her name from the deed," having repeatedly and unsuccessfully asked Bank of America to take possession and ownership, or enter a consent judgment. *Id*. at 4 (quoting brief and citing Kuttner's affidavit). Between the September and October 2013 hearings, Kuttner had also moved a state court for entry of a consent judgment, but that motion was also, for unknown reasons, denied. *Id*. In short, Kuttner remained stuck with legal title to the condo.

For its part, the Condo Association moved for sanctions against both Kuttner and Salem. R. 7-4, Creditor's Mot. Sanctions, dated Feb. 12, 2014. After briefing from the parties and a February 2014 hearing, the bankruptcy court denied Kuttner's original request for relief based on an alleged violation of the automatic stay and denied her motion for summary judgment. R. 7-4, Order Denying Debtor's Mot. Summ. J., dated Feb. 27, 2014. The court noted that it was "just glaring from" the applicable statute as well as case law that Salem's argument that Kuttner's statement of intention to surrender the condo had legally effectuated a transfer was untenable. Sanctions Order at 4 (citing February 27 hearing). The court accordingly asked for an itemized petition for attorney's fees and costs as an award of sanctions, which the Condo Association submitted in the amount of $8,067.50. *Id*. at 5.

**B. Reasoning Behind Sanctions**

The bankruptcy court premised its grant of sanctions on Fed. R. Bankr. P. 9011, which requires that claims and other legal contentions made to the court in motions be warranted by law or based on a non-frivolous argument. Sanctions Order at 5. The court took issue with Salem having filed his sanctions motion for

4

alleged post-petition assessments by the Condo Association in April 2013, when the automatic stay preventing collection attempts would have ended with the discharge of her petition in August 2012; the alleged demands, at least those initially identified, occurred well after that date, in early 2013. *Id.* at 6-7. The "proper basis" for Kuttner's requested relief, the court noted, "would have been a violation of the discharge injunction," which also would have prohibited improper collection attempts. *Id.* at 7. But even on this basis, the problem was that post-petition condominium assessments, as the court had hinted and stressed repeatedly in the hearings, are "excepted from discharge" by statute, making Salem's argument that the Condo Association should be sanctioned for levying these fees a "position that is directly contradictory to existing law." *Id.* at 7-8. Additionally, the bankruptcy court found that Salem's insistence that Kuttner's statement of intention that she would surrender the condominium legally accomplished a transfer was frivolous, again based on clear statutory language. *Id.* at 9. The court noted that Salem had cited no case law in support of his "unorthodox argument." *Id.*

After chiding Salem for not heeding repeated warnings that his positions were not warranted by law, including from opposing counsel, the court set sanctions at $3,000 against Salem only, describing the purpose as "not to reimburse the Association in full for its attorney's fees" but to "deter counsel from pursuing a frivolous argument." *Id.* at 11 ("I think your heart is in the right place. I know you're trying very aggressively to help your client here, but you still have to do it within the balance of the law ... .") (quoting prior hearing).

5

## II. Standard of Review

A federal district court has jurisdiction, under 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the bankruptcy court's legal findings *de novo* and its factual findings for clear error. *In re Miss. Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). A bankruptcy court's decision to impose sanctions is reviewed for an abuse of discretion. *In re Hancock*, 192 F.3d 1083, 1085 (7th Cir. 1999). "Unless the sanctioning court has acted contrary to the law or reached an unreasonable result," the order will be affirmed. *In re Rimsat, Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000) (citations omitted).

## III. Discussion

### A. Salem was Properly Noticed as Appealing Party

To begin, the Court addresses an issue that, though only raised by the Condo Association half-heartedly, is necessary to clear up because it implicates the Court's jurisdiction to even hear this appeal. The Condo Association asserts that this appeal "may be procedurally deficient" because Salem, who is the subject of the sanctions order, has "filed no notice of appeal" in his own name, as opposed to Kuttner's. R. 10, Appellee's Br. at 8-9. Under the bankruptcy rules, to trigger jurisdiction, a notice of appeal "shall contain the names of all parties to the judgment, order or decree appealed from and the names, addresses and telephone numbers of their respective attorneys." Fed. R. Bankr. P. 8001(a). This requirement is analogous to the rule of federal appellate procedure stating that a notice of appeal "shall specify the party or parties taking the appeal … [.]" Fed. R. App. P. 3(c).

For a situation like this appeal, where it is an attorney rather than a party who wishes to appeal an order, there is a split in authority on just what the notice of appeal must say. The Fifth Circuit has held, for example, that Fed. R. Bank. P. 8001(a) only requires that the notice include the name of the appellant-attorney *somewhere*, even if it does not explicitly designate the attorney, as opposed to his or her client, as the appealing party. *Matter of Case*, 937 F.2d 1014, 1021 (5th Cir. 1991) (characterizing the bankruptcy rule's requirement that notice "shall *contain* the names" as more permissive than appellate procedural rule's requirement that notice "shall *specify* the party"); *but see Storage Tech. Corp. v. U.S. Dist. Court for Dist. of Colorado*, 934 F.2d 244, 248 (10th Cir. 1991). At least one court in this District has rejected that reasoning, holding that the Fifth Circuit's reading of Rule 8001(a) departed from the rule's text. *In re Pettibone Corp.*, 145 B.R. 570, 573-74 (N.D. Ill. 1992). Instead, according to *Pettibone*, the attorney's name, "in either the caption or the body of the notice of appeal," has to be "specified as appellant[ ]" to make the notice valid. *Id.* at 574 (attorney's inclusion in "lower left hand corner of the notice (in the traditional spot where counsel for the appellant is identified)" was insufficient) (relying on *Torres v. Oakland* Scavenger Co., 487 U.S. 312, 317 (1988)) (courts may not waive jurisdictional requirements of Fed. R. App. P. 3).

The Court need not take a position on the split here because, contrary to the Condo Association's unexplained assertion otherwise, Salem *did* notice an appeal in his own right. The notice of appeal unambiguously reads: "Please take notice, that that [sic] Debtor's counsel, Maurice James Salem, hereby appeals … from a January

7

20, 2015 final order of the bankruptcy Judge … granting motion for sanctions against Debtor's counsel." R. 1, Notice of Appeal. Even under the stricter *Pettibone* view that the bankruptcy rules require clear notice of who is the actual appealing party, Salem's filing passes muster. The Condo Association offers no authority or argument that Salem needed to provide more. Accordingly, the appeal has been properly noticed under Salem's name and this Court does have jurisdiction over the appeal.

**B. Scope of Appeal is Limited to Sanctions Order**

Before turning to the merits of the sanctions challenge, there is a second threshold issue that warrants clarification, specifically, the scope of the appeal at hand. The Condo Association seeks assurance that the Court has jurisdiction only to hear Salem's appeal of the January 20, 2015 sanctions order (on which the Association concedes the notice of appeal was timely filed), and not to entertain a challenge of the bankruptcy court's denial of Kuttner's summary judgment motion on February 27, 2014 (for which the time to appeal has long run, a fact Salem does not deny). Appellee's Br. at 8; *see* Fed. R. Bankr. P. 8002 ("[A] notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."). It is true that Salem's brief discusses the summary judgment motion, but some of that discussion was to be expected, given that the sanctions imposed on him arise from the arguments he made on the Condo Association's assessment attempts (made simultaneously in his own sanctions motion as well as his motion for summary judgment). To be clear, the Court cannot

8

*directly* review the soundness of the bankruptcy court's ruling on the summary judgment motion for liability related to post-petition assessments; Salem did not notice such an appeal, *see* Notice of Appeal, and, although there is some attempt at justifying his litigation strategy at the time of filing the motion thrown into his brief, *see* R. 9, Appellant's Br. at 13, Salem does not argue (nor could he) for a reversal of the summary-judgment determination itself.

### C. Sanctions Order was not an Abuse of Discretion

Turning to the merits of the appeal, the Court concludes that the bankruptcy court did not abuse its discretion in sanctioning Salem for his attempt to win sanctions against the Condo Association and summary judgment on the post-petition assessments claim. Salem argues that sanctions were inappropriate because he had a "legal basis" to argue that the assessments violated the automatic stay. Appellant's Br. at 7-11.[2] Rule 9011, in relevant part, requires that "legal contentions" made to the court be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Bankr. P. 9011(b)(2). Where a party violates this requirement, sanctions may be imposed. Fed. R. Bankr. P. 9011(c). Salem relies on the same arguments he advanced in his opposition to the Condo Association's motion for sanctions before the bankruptcy court: that although "[a]s a matter of law the Association is entitled to pursue post-petition fees," this right was in conflict

---

[2]Salem did not file a reply brief, despite his right to do so. Salem took a risk in not replying, as failure to file a reply can constitute waiver of arguments in certain contexts. *See, e.g.*, *United States v. Thompson*, 286 F.3d 950, 970 (7th Cir. 2002). (Waiver in this case would apply only to any arguments related to the merits of the sanctions award, as opposed to any jurisdictional concerns, which may not be waived.)

9

with "[a] fundamental goal of the federal bankruptcy laws … to give debtors a financial 'fresh start,'" giving Salem a non-frivolous ground to argue that the law should be modified to enable a challenge to the assessments. Appellant's Br. at 11 (quoting brief to bankruptcy court).

It is true, as Salem argues, that sanctions should not be "intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Appellant's Br. at 6 (quoting Advisory Committee Notes to 1983 Amendment of Federal Rules of Civil Procedure). Where there is ambiguity in the law, or even a governing doctrine that warrants critique or re-examination, an attorney ought to be free to advocate vigorously for the "modification or reversal of existing law" in support of his client's interests, as Rule 9011 contemplates. But that freedom to raise dynamic arguments, as suggested by the language of Rule 9011 itself, is not unbounded. Arguments that are "legally unreasonable," for instance, fall into the category of the frivolous and therefore sanctionable. *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 969 (7th Cir. 2000) (quoting *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998)).

Salem's fundamental problem is that, no matter how genuine his belief that allowing condominium associations to make post-petition assessments flies in the face of the promise of a blank slate that bankruptcy otherwise guarantees,[3] his

---

[3]Representations to the court may also be sanctionable where they are made "for any improper purpose, such as to harass." Fed. R. Bankr. P. 9011(b)(1). There is no suggestion here that Salem brought his motions for such a purpose. The bankruptcy court itself acknowledged that Salem's "heart [was] in the right place," and that he was simply "trying very aggressively to help [his] client." Sanctions Order at 11 (quoting hearing). Nonetheless, the sanctions are justifiable not because of Salem's bad faith, but because his

10

motions were legally unreasonable. It would be one thing if the issues raised by his motions had turned on case law, which, even if established, might be the subject of split authority or vulnerable to outright reversal—an advocate can certainly urge a court, where it is not otherwise bound, to modify a rule or adopt a new one altogether where it can reasonably do so. But the issues facing Salem were ones narrowly circumscribed by statutory law. First, Congress has specifically provided that post-petition condominium obligations are not dischargeable so long as the debtor remains in ownership. 11 U.S.C. § 523(a)(16).[4] Indeed, the bankruptcy code provides for a rather long list of debts that may not be discharged, *see* 11 U.S.C. § 523(a), in recognition that some creditors' rights will trump the general countervailing interest of a "fresh start" for the debtor. Second, on the question of whether a debtor's statement of intention to transfer could suffice to relinquish ownership over property, statutory language also unambiguously debunked Salem's position. A debtor may file such a statement of intention "with respect to the retention or surrender" of property, 11 U.S.C. § 523(a)(2)(A), but the next section makes clear the debtor must still "*perform his intention* with respect to such property" within a set period of time, 11 U.S.C. § 523(a)(2)(B) (emphasis added).

---

aggressiveness crossed the line into advocacy of the unreasonable and frivolous. Thus, Salem's reliance on his lack of ulterior reasons or motive to harass, Appellant's Br. at 14, is neither here nor there.

[4] In relevant part, Section 523(a)(16) renders non-dischargeable any debt "for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership … for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit …, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case."

11

There is no reasonable way to argue from these two related sections that a statement of intention by itself could have any legal effect on its own, when the intended transfer must still be performed. (On a common-sense level, it is counter-intuitive to think that stating one's *intent* accomplishes in itself the intended act.)

As described above, the bankruptcy court repeatedly cautioned Salem on these grounds, namely, that federal statutes stood in the way of the arguments he was trying to advance. No federal court is empowered to compel an outcome counter to the will of Congress (short of the statute being unconstitutional), and consistently asking the court to do so is legally unreasonable. *See, e.g.*, *Drain v. Accredited Home Lenders Inc.*, 219 F. App'x 791, 793 (10th Cir. 2007) (upholding sanctions under Fed. R. Civ. P. 11 where "[i]f Plaintiff's counsel had conducted any legal research, or even read the statute, he would have discovered that his argument was contrary to the plain language of [relevant] statute."); *see also Coleman v. C.I.R.*, 791 F.2d 68, 71 (7th Cir. 1986) (notwithstanding "ambiguities that lurk in 'frivolous,'" tax courts may impose sanctions on grounds for frivolity for a filing "if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law."). And yet that is what Salem continued to do, forcing the Condo Association to defend against the sanctions and summary-judgment motions, when in his research, for instance, Salem could not produce one case supporting his counter-to-statutory-language interpretation of the effect of a statement of intention. Given this background, the Court cannot say that the bankruptcy court abused its discretion, that is, "acted contrary to the law or reached an unreasonable

12

result" in sanctioning Salem for part of the legal costs borne by the Condo Association. *In re Sokolik*, 635 F.3d 261, 269 (7th Cir. 2011).

One aspect of the sanctions order does merit further clarification, to avoid any confusion. Towards the end of its analysis, the bankruptcy court included a sentence on the court's attempt to get Salem to specify what, if any, alleged *pre*-petition assessments by the Condo Association were at issue. Sanctions Order at 10. Following this sentence was a block quote from an April 2014 hearing, in which the bankruptcy court pointed out Salem's inability to explain how much the Condo Association had sought to collect in pre-petition fees. *Id*. ("I asked you to find out, and I indicated that would be a violation. You never came back to me."). It is worth emphasizing here that, just as the bankruptcy court had also suggested, any argument that Salem made that the Condo Association violated the automatic stay by trying to collect *pre*-petition assessments would *not* have been frivolous, because, in contrast to *post*-petition assessments, the stay does operate against collecting pre-petition assessments. *See* Sept. 26, 2012 Hrg. Tr. at 34:7-8.

Indeed, there is evidence in the record that the Condo Association might have assessed and tried to collect, at least in part, pre-petition assessments on Kuttner once she had filed for bankruptcy: a 2012 invoice shows that the Condo Association allegedly sought to collect $5,492.08 from her in June 2012, a figure that likely included at least some *pre*-petition assessments, because her Chapter 7 case was commenced only two months earlier, in April 2012. R. 7-4, Invoice dated Nov. 6, 2012. (This was the pre-petition fees breakdown that the bankruptcy court was

13

frustrated Salem could not provide, despite being given time to specifically ascertain it.) In any event, for whatever reason, as Salem acknowledges, he did not raise claims on the pre-petition assessments when moving for summary judgment, choosing to wait for some kind of trial on this issue. Appellant's Br. at 3. In imposing the sanctions, the bankruptcy court's Order makes no substantive use of Salem's presentation on the pre-petition assessments, and the discussion of them appears to be nothing more than an aside. So, although the bankruptcy court did briefly mention the pre-petition assessments, it is clear from the remainder of the Order that the sole basis for sanctions was Salem's filing of motions on the claims targeting the *post*-petition assessments—which, for the reasons already discussed, *were* frivolous. *See* Sanctions Order at 11 ("Salem continued to … pursue these frivolous arguments—that *pursuit of post-petition assessments* violated the discharge injunction … [.]") (emphasis added). The Court is confident that no part of the sanctions was based on the non-frivolous pre-petition assessments, so there is no need for a vacatur to clarify that point.

## IV. Conclusion

As described above, the bankruptcy court did not abuse its discretion in granting sanctions in the amount of $3,000 against attorney Maurice Salem. The bankruptcy court's order is affirmed.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 8, 2015